```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                       ATHENS DIVISION
```

| | |
|---|---|
| MERIAL LIMITED, | * |
| Plaintiff, | * |
| vs. | *    CASE NO. 3:08-CV-116 (CDL) |
| BOEHRINGER INGELHEIM VETMEDICA, INC., | * |
| | * |
| Defendant. | |
| | * |

O R D E R

Plaintiff Merial Limited ("Merial") alleges that Defendant Boehringer Ingelheim Vetmedica, Inc. ("BIV") infringed its patent. BIV moves to dismiss Merial's Complaint, contending that Merial does not have a valid ownership interest in the patent at issue and thus does not have standing to pursue its claims. BIV also contends that this action should be transferred to the U.S. District Court for the District of Connecticut. For the reasons set forth below, BIV's Motion to Dismiss (Doc. 17) is denied, and BIV's Motion for Transfer of Venue (Doc. 13) is granted.

BACKGROUND

**I.   Factual Background**

In 2001, BIV and Protein Sciences Corporation ("PSC") entered into a Research and License Agreement ("2001 Agreement") to develop and commercialize swine vaccines related to influenza. (*See generally* Ex. A to Abele Decl., May 6, 2009, Research and License Agreement, Dec. 3, 2001 [hereinafter 2001 Agreement].)  The 2001 Agreement grants BIV an exclusive license for specified purposes in

certain patents owned by PSC, including U.S. Patent No. 6,224,882 ("'882 Patent"). (2001 Agreement § 5.2.) The 2001 Agreement contains a section on "Ownership of Intellectual Property":

> (a) PSC shall retain exclusive ownership of all patents, patent applications, inventions, developments and improvements which (i) were its property as of or prior to the date of this Agreement, (ii) which are made part of the Licensed Patents, or (iii) which are conceived, made and developed during the Term of this Agreement solely by PSC.
>
> (b) BIV shall retain exclusive ownership of all inventions, developments and improvements which (i) were its property as of or prior to the date of this Agreement, or (ii) which are conceived, made and developed during the Term of this Agreement solely by BIV.

(*Id.* § 8.5.) The 2001 Agreement also contains a section on "Assignment and Delegation":

> This Agreement and the rights and duties of the Parties hereunder may not be assigned or delegated by either Party without the prior written consent of the other Party hereto, except that a sale of the entire business interest of a Party that is related to this Agreement shall not be considered an assignment hereunder. Any attempted assignment or delegation, not expressly authorized in this Section 16.1, shall be null and void.

(*Id.* § 16.1.) Finally, PSC and BIV agreed that the 2001 Agreement would "be governed in all respects by the laws of the State of Connecticut." (*Id.* § 16.5.)

In 2004, PSC and BIV entered into a License Agreement - Non-Exclusive ("2004 Agreement"), which pertained to BIV's "research and development directed at products to be used for the continuation and

maintenance of health in animals, including, without limitation, vaccines for the prevention of disease in swine caused by Circo virus, with the exception of products related to swine influenza virus[.]" (Ex. 1 to Denecke Decl., Feb. 4, 2009, License Agreement - Non-Exclusive 1, Sept. 1, 2004 [hereinafter 2004 Agreement].) The 2004 Agreement grants BIV a nonexclusive license in U.S. Patent No. 6,103,526. (2004 Agreement §§ 1.5, 2.1.) The 2004 Agreement provides that it does not grant any license to other PSC patents, including the '882 Patent, except to the extent that BIV *requires* such a license "to practice the license granted to it under Section 2.1." (*Id.* § 2.2.) The 2004 Agreement also contains a choice of law provision and forum selection clause:

> Any disputes, controversies or claims which arise under, out of, in connection with, or relating to this Agreement shall be governed by and interpreted in accordance with the laws of the State of Connecticut, without regard to choice of law, and the parties agree that all disputes, controversies or claims which arise under, out of, in connection with, or relating to this Agreement shall be brought in the Courts situated in the State of Connecticut for the resolution thereof, and the parties therefore submit to the exclusive jurisdiction of the State and Federal Courts situated in the State of Connecticut for resolution of all disputes, controversies or claims which arise under, out of, in connection with, or relating to, this Agreement.

(*Id.* § 13.) Finally, the 2004 Agreement provides that it "shall extend to and be binding upon the successors and legal representatives and permitted assigns of [PSC]." (*Id.* § 9.2.)

In 2008, PSC assigned the '882 Patent to Merial pursuant to a Patent Assignment: Protein Sciences Corporation to Merial ("'882

3

Assignment"). (*See generally* Ex. 4 to Kowalski Decl., Apr. 6, 2009, Patent Assignment: Protein Sciences Corporation to Merial [hereinafter '882 Assignment].) The '882 Assignment states, in relevant part:

    1.    [PSC] hereby assigns and transfers unto [Merial] and its successors and assigns, the entire right, title and interest, in, to and under:

        A.    The patents and patent applications set out in Exhibit A and the inventions and discoveries thereof . . . and,

        B.    Any and all rights of enforcement with respect to the Patents, including all rights to sue and recover for past, present and future infringement thereof, and any and all causes of action, in law, equity or otherwise related thereto.

        . . . .

    3.    [PSC] thus hereby authorizes [Merial] to file, prosecute, defend, enforce, and maintain the Patents, at [Merial's] sole discretion . . . in the name of [Merial], and authorizes and requests the Commissioner of Patents and Trademarks of the United States of America and the empowered officials of all other patent offices and governments to issue or transfer the Patents to [Merial], as assignee of the entire right, title and interest therein.

('882 Assignment §§ 1, 3.) The '882 Assignment further states:

    [PSC] warrants that it has not knowingly conveyed to others any right or license in, to or under the Patents, or in, to [or] under inventions or discoveries in the Patents, and that [PSC] has good right and title to assign the Patents to [Merial] without encumbrance.

(*Id.* § 4.)

## II.  Procedural Background

Merial filed the present patent infringement action on December 8, 2008, alleging that it has a valid ownership interest in the '882 Patent and that BIV infringes the '882 Patent because it "makes, uses, offers to sell, sells, causes to be sold, or causes the making or the use of" certain accused products.  (Compl. ¶¶ 5, 7, 9.)  On February 4, 2009, BIV filed a declaratory judgment action in the United States District Court for the District of Connecticut ("Connecticut Action"), seeking a declaration that (1) BIV has a license to practice the claims of the '882 Patent, (2) BIV does not infringe any valid claims of the '882 Patent, and (3) Merial lacks ownership in the '882 Patent such that Merial cannot enforce any rights in the patent.  (1st Am. Compl. ¶¶ 4-6, *Boehringer Ingelheim Vetmedica, Inc. v. Merial Ltd.*, 3:09-CV-212 (AWT) (D. Conn.).)  *See also Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, Civ. No. 3:09CV212 (AWT), 2010 WL 174078, at *1 (D. Conn. Jan. 14, 2010) (citing 1st Am. Compl.).

BIV moves to dismiss this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  BIV also moves to transfer this action to the U.S. District Court for the District of Connecticut pursuant to 28 U.S.C. § 1404.  The Court addresses each motion in turn.

DISCUSSION

**I.    Motion to Dismiss**

    A.    Standard

BIV moves to dismiss Merial's Complaint for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  A 12(b)(1) motion to dismiss can be asserted on either facial or factual grounds.  *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  Here, BIV raises a factual attack on subject matter jurisdiction because it contends that Merial does not have a valid interest in the '882 Patent, despite Merial's allegation to the contrary.  In resolving this factual attack, the Court may consider evidence outside the pleadings and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" without presuming that Merial's allegations are true, as the Court would do on a facial attack to subject matter jurisdiction. *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (internal quotation marks omitted).

    B.    Analysis

BIV contends that PSC's assignment of the '882 Patent to Merial is invalid and that Merial thus lacks standing to enforce the '882 Patent.  *See, e.g., AssymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009) (noting that patent infringement action "ordinarily must be brought by a party holding legal title to the patent," such as an assignee).  Specifically, BIV argues that the

6

'882 Assignment is invalid because the 2001 Agreement prohibited such an assignment without BIV's prior written approval, which was not given, and that, under the anti-assignment provision of the 2001 Agreement, the '882 Assignment is "null and void." (2001 Agreement § 16.1.)

BIV made a nearly identical argument in the Connecticut Action. In that action, BIV sued both PSC and Merial, contending that PSC is the proper owner of the '882 Patent and that PSC, not Merial, is the proper party to enforce any rights in the '882 Patent. PSC moved to dismiss BIV's claims against it, arguing that it validly assigned all of its rights in the '882 Patent to Merial and that PSC therefore lacked standing to enforce any rights in the '882 Patent. The Connecticut Court granted the motion to dismiss, finding that PSC validly assigned the '882 Patent to Merial—including all rights of enforcement—and rejecting BIV's argument that the assignment was invalid under the anti-assignment provision of the 2001 Agreement. In reaching this conclusion, the Connecticut Court applied Connecticut contract law and performed an extensive analysis of the relevant provisions of the 2001 Agreement, finding that the '882 Assignment was not prohibited under the 2001 Agreement and that Merial took title to the '882 Patent subject to existing licenses. *Boehringer Intelheim Vetmedica, Inc.*, 2010 WL 174078, at *6-*9.

The Court agrees with and adopts the Connecticut Court's thorough and well-reasoned analysis and concludes that the '882 Assignment to Merial is valid. Accordingly, Merial has a right to

7

bring an infringement action with respect to the '882 Patent. BIV's Motion to Dismiss (Doc. 17) is therefore denied.

## II.  Motion to Transfer

### A.  Standard

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The Court has discretion to decide whether to transfer a case to another district based on an individualized "consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).  The federal courts typically accord a plaintiff's choice of forum considerable deference, so the § 1404(a) movant has the burden to establish that its proposed forum is more convenient.  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam).[1]

---

[1] Merial moved to transfer the Connecticut Action to this Court, arguing in part that the "first to file" rule prohibited the Connecticut Court from retaining the Connecticut Action.  The Connecticut Court denied the motion.  *Boehringer Intelheim Vetmedica, Inc.*, 2010 WL 174078, at *17. The Connecticut Court noted that the Connecticut Action is the second-filed action but decided that the "first to file" rule did not prevent the Connecticut Court from deciding the transfer issue.  Under the "first to file" rule, the court of the first-filed suit generally has priority to decide whether the second suit must be dismissed, stayed, or transferred and consolidated.  *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135-36 (11th Cir. 2005); *see also Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).  Assigning BIV the burden to establish that it was appropriate for the Connecticut Court to retain the Connecticut Action (and not Merial, which, as the movant would typically have the burden to justify a § 1404 transfer), the Connecticut Court determined that the "balance of convenience" favored the Connecticut Action.  For the reasons discussed in this Order, even if this Court had been the first to decide whether this action should be transferred, it would have concluded that it is appropriate to transfer this action to the

8

B.  Analysis

Connecticut is a forum where the pending action "might have been brought."  Merial does not appear to contend otherwise.  The Connecticut Court would have subject matter jurisdiction over Merial's patent infringement claim.  28 U.S.C. §§ 1331, 1338.  The Connecticut Court would have personal jurisdiction over BIV because, according to BIV, BIV "has had continuous and systemic contacts with the State of Connecticut, arising by virtue of [BIV's] internet sales in Connecticut."  (BIV's Br. in Supp. of Mot. for Transfer of Venue 6.)  Venue would be proper in the Connecticut Court because, as BIV asserts, BIV allegedly committed acts of infringement in Connecticut and because certain events giving rise to Merial's claim took place in Connecticut.  (*Id.*)  Accordingly, this action "might have been brought" in the District of Connecticut.

The Court now turns to the question whether the "convenience of parties and witnesses" and "the interest of justice" weigh in favor of the requested transfer.  Before addressing the nine factors that are typically evaluated in making such a determination,[2] the Court

---

Connecticut Court.

[2] The nine factors are:

(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

9

must determine whether the forum selection clause in the 2004 Agreement between PSC and BIV weighs in favor of transfer, as BIV argues it does.  "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  "The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general." *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (per curiam).  Factors to consider in determining the validity of a forum selection clause include whether the clause was "freely and fairly negotiated by experienced business professionals" and whether there is any evidence of "fraud, duress, misrepresentation, or other misconduct that would bar the clause's enforcement."  *In re Ricoh Corp.*, 870 F.2d at 573-74.

    Here, the forum selection clause in the 2004 Agreement was negotiated by experienced business professionals, and there is no evidence of any misconduct in the formation of the forum selection clause.  There is no claim that the clause is invalid because of

---

*Manuel*, 430 F.3d at 1135 n.1.  In considering these factors, the courts must usually bear in mind that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (internal quotation marks omitted).

fraud or overreaching. The clause is mandatory because it dictates Connecticut as the exclusive forum for litigation under the contract. (2004 Agreement § 13.) The clause covers the claims at issue here because it applies to "[a]ny disputes, controversies or claims which arise under, out of, in connection with, or relating to" the 2004 Agreement. (*Id.*) Merial contends that BIV is infringing the '882 Patent (Compl. ¶¶ 5, 9), and BIV asserts that it has a license under the 2004 Agreement "to practice the claims of the '882 Patent to make, use, sell, and/or offer for sale" certain products, including the accused products (Answer ¶ 18, 2d Affirmative Defense). Resolution of Merial's claims turns on whether BIV *requires* a license to the '882 Patent to practice the license granted to it under the 2004 Agreement. (*See* 2004 Agreement § 2.2.) Furthermore, Merial should be bound by the forum selection clause in the 2004 Agreement because the 2004 Agreement is binding upon the successors of PSC (*id.* § 9), and Merial seeks to assert patent rights assigned to it by PSC, a signatory of the 2004 Agreement. For all of these reasons, the Court concludes that the forum selection clause is valid and enforceable.

"[W]hen a motion under section 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opponent bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute." *In re Ricoh Corp.*, 870 F.2d at 573. The Court is not satisfied that Merial has

made the requisite showing that the contractual forum, Connecticut, is sufficiently inconvenient to justify retention of the dispute by this Court.  Merial asserts that its choice of forum is entitled to great weight, but its choice of forum is in direct conflict with a valid and enforceable forum selection clause, so Merial's choice of forum does not weigh against transfer; nor do most of the other factors.  Though Merial's witnesses are located in Georgia, most of the non-party witnesses are located in or near Connecticut.  As Merial concedes, the location of documents and relative ease of access to sources of proof does not weigh for or against transfer; documents relating to Merial's claims are likely located in Georgia, while documents regarding prosecution of the '882 Patent are likely located in or near Connecticut, and documents regarding the accused products are likely located predominately at BIV's facility in Missouri.  (Merial's Opp'n to BIV's Mot. for Transfer of Venue 17-18.)  Merial also admits that the convenience and relative means of the parties are neutral factors, as is the forum's familiarity with the governing law.  (*Id.* at 16-18.)  Merial also asserts that the availability of process and the locus of operative facts do not weigh for or against transfer.  (*Id.* at 17-18.)  The only remaining factor is trial efficiency and the interests of justice.  Merial contends that this factor weighs against transfer because a similar patent infringement suit involving the '882 Patent is pending in this Court (*Merial Ltd. v. Intervet, Inc.*, 3:08-cv-121 (M.D. Ga.)).  While that factor weighs slightly against transfer because the issues of claim

construction and validity of the '882 Patent will overlap, the Court does not find that this factor makes Connecticut sufficiently inconvenient to justify this Court's retention of the dispute.

In summary, under the circumstances of this case, particularly the mandatory, enforceable forum selection clause in the 2004 Agreement, the Court concludes that Merial has not met its burden to show that the contractual forum, Connecticut, is sufficiently inconvenient to justify retention of the dispute.  Accordingly, the Court grants BIV's Motion for Transfer of Venue (Doc. 13).

## CONCLUSION

As discussed above, BIV's Motion to Dismiss (Doc. 17) is denied, and BIV's Motion for Transfer of Venue (Doc. 13) is granted.  The Clerk is directed to transfer this case to the U.S. District Court for the District of Connecticut.

IT IS SO ORDERED, this 11th day of March, 2010.

                                        S/Clay D. Land
                                          CLAY D. LAND
                                  UNITED STATES DISTRICT JUDGE